<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUAN F. GONZALEZ,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>　　　　　　　Defendant. | Case No.:  2:15-cv-1618 (PAZ)<br><br>　　　**OPINION** |

**APPEARANCES:**

ABRAHAM S. ALTER
LANGTON & ALTER, ESQS.
1600 ST. GEORGES AVENUE
P.O. BOX 1798
RAHWAY, NJ  07065
　　　On behalf of Plaintiff

CATHERINE HAMILTON
SPECIAL ASSISTANT U.S. ATTORNEY
c/o SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL, REGION III
P.O. BOX 41777
PHILADELPHIA, PA  19101
　　　On behalf of Defendant

**PAUL A. ZOSS, United States Magistrate Judge.**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Juan F. Gonzalez for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (42 U.S.C. §§ 401,

et seq.) and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (42

U.S.C. §§ 1381, et seq.).  Plaintiff appeals from the final decision of the Administrative Law Judge

("ALJ") denying the applications; Defendant, the Commissioner of Social Security ("the Commissioner"), opposes Plaintiff's appeal.[1] After careful consideration of the record, including the ALJ hearing transcripts, the ALJ's decision, and the pleadings and memoranda of the parties, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f).[2] For the reasons set forth below, the Court reverses the Commissioner's decision that Plaintiff was not disabled and remands the case in accordance with the following instructions.

## I.    PROCEDURAL HISTORY

On April 6, 2012, Plaintiff filed applications for DIB and SSI alleging a disability onset date of October 9, 2010. (R. 184-93.)[3] On June 22, 2012, the Commissioner determined that Plaintiff was not disabled and denied the applications. (R. 86-87.) Plaintiff filed for reconsideration, and his applications were again denied on November 13, 2012. (R. 103-04.) On April 17, 2013, an Administrative Law Judge held a hearing on Plaintiff's applications; Plaintiff was represented by counsel at the hearing and testified with the assistance of a Spanish interpreter.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. On March 6, 2018, the Government Accountability Office stated that, as of November 17, 2017, Ms. Berryhill's status violated the Federal Vacancies Reform Act, which limits the time a position can be filled by an acting official and "[t]herefore Ms. Berryhill was not authorized to continue serving using the title of Acting Commissioner[.]" *Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1988 Commissioner*, Social Security Administration, Government Accountability Office (Mar. 6, 2018). However, Ms. Berryhill continues to functionally lead the Social Security Administration from her position of record as Deputy Commissioner of Operations. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the defendant in this suit.

[2] Plaintiff's brief concludes with a request for oral argument. *See* ECF No. 13 at 28. In this Court, all Social Security cases are resolved on the briefs "unless a request for oral argument is granted or as otherwise directed by the Court." L.Civ.R. 9.1(f). The Court has carefully reviewed the written submissions of counsel together with the record and finds oral argument unnecessary because this case "does not present any extraordinary or unusual issues that would necessitate granting [Plaintiff's] request." *Peretta v. Colvin*, No. 14-cv-250 (RBK), 2015 WL 1808509, at *1 n.2 (D.N.J. Apr. 21, 2015).

[3] "R." refers to the continuous pagination of the administrative record. ECF No. 10.

(R. 43-65.) On June 10, 2013, the ALJ issued a decision denying Plaintiff's applications. (R. 23-42.) On January 8, 2015, the Appeals Council denied Plaintiff's request for appeal (R. 3-10), thereby affirming the ALJ's decision as the "final" decision of the Commissioner.

On March 4, 2015, Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3). ECF No. 1. On April 19, 2018, Plaintiff consented to have a U.S. Magistrate Judge conduct all further proceedings in the case to disposition pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 16.[4] The case was reassigned to the undersigned Magistrate Judge on June 28, 2018.

## II.    LEGAL STANDARD

### A.    <u>Standard of Review</u>

This Court has plenary review of legal issues decided by the ALJ in reviewing applications for DIB and SSI. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 (JLL), 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

---

[4] Defendant has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

The substantial evidence standard is a deferential one, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484 (RBK), 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed

to resolve an evidentiary conflict." *Coleman*, 2016 WL 4212102 at *3 (citing *Schonewolf*, 972 F. Supp. at 284-85) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978))).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984)). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.    Standard for Awarding Benefits**

Under the Social Security Act, an adult claimant (i.e., a person over the age of eighteen) is disabled and eligible for DIB or SSI based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. §§ 404.1505(a), 416.905(a).[5] An impairment is "medically determinable" if it results from anatomical, physiological, or psychological

---

[5] Although the standards for disability are the same for both DIB and SSI, these are separate government programs subject to different qualification requirements.

abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Thus, an impairment must be established by objective medical evidence from an acceptable medical source and cannot be established by a statement of symptoms, a diagnosis, or a medical opinion. *Id*. §§ 404.1521, 416.921.

The process for determining an adult's claim for DIB or SSI involves a five-step sequential inquiry. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a).[6] The claimant bears the burden of proof at Steps One through Four. At Step Five, the burden shifts to the Commissioner. *Id*. §§ 404.1512, 416.912; *see Holley v. Colvin*, 975 F. Supp.2d 467, 476-77 (D.N.J. 2013), *aff'd sub nom. Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167 (3d Cir. 2014). At each Step, the ALJ must consider the combined effect of all the claimant's physical and mental impairments without regard to whether any single impairment, if considered separately, would be of sufficient severity to proceed to the next Step. 20 C.F.R. §§ 404.1523(c), 416.923(c).

At Step One, the ALJ decides whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is work activity that involves doing significant physical or mental activities and is usually done for pay or profit. *Id*. §§ 404.1572(a) & (b), 416.972(a) & (b). If the claimant is engaging in such activity, then the inquiry ends because the claimant is not disabled.

"The [Step Two] inquiry is a de minimis screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). At this Step, the ALJ decides whether the claimant has a medically determinable impairment or a combination of such impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination

---

[6] This case arises from a claim filed before March 27, 2017 and is therefore analyzed by this Court – as it was by the ALJ – under 20 C.F.R. §§ 404.1527 and 416.927.

of impairments is severe if it significantly limits a claimant's ability to perform basic work activities. An impairment or combination of impairments is not severe if the claimant has a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. *Id*. §§ 404.1522, 416.922. If the claimant does not have a severe impairment or combination of impairments, then the inquiry ends because the claimant is not disabled.

At Step Three, the ALJ decides whether the claimant's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment(s) in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's specific impairment is not listed, the ALJ will consider the most closely analogous listed impairment for purposes of deciding medical equivalence. *Id*. §§ 404.1526(b)(2), 416.926(b)(2). If the claimant has an impairment or combination of impairments that meets or medically equals a Listing, then the claimant is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. §§ 404.1509, 416.909.

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC"), determine the physical and mental demands of the claimant's past relevant work, and determine whether claimant has the level of capability needed to perform past relevant work. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). RFC is the claimant's maximum remaining ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. Past relevant work is work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the disability date. In addition, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *Id*. §§ 404.1560, 404.1565, 416.945,

416.960.  If the claimant's RFC enables her/him to perform past relevant work, then the claimant is not disabled.

At Step Five, the ALJ must decide whether the claimant, considering her/his RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If the claimant is incapable of doing so, then s/he is presumed to be disabled if her/his impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.  Otherwise, the claimant is not disabled.

In deciding the claimant's ability to perform other jobs that exist in significant numbers in the national economy, the ALJ must consider whether the claimant's impairment and symptoms result in exertional and/or non-exertional limitations.  The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertion levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id*. at §§ 404.1569a(a) & (b), 416.969a(b).  Non-exertional limitations affect a claimant's ability to meet all other demands of a job (i.e., non-strength demands), including but not limited to difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.  *Id*. §§ 404.1569a(c), 416.969a(c).

If the claimant has no non-exertional limitations and can perform all or substantially all exertion demands at a given level, then the ALJ must use the Medical-Vocational Rules (also referred to as "Grid Rules") found at 20 C.F.R. § 404, Subpart P, Appendix 2.  20 C.F.R. §§ 404.1569a(b), 416.969a(b).  The Grid Rules reflect various combinations of RFC, age, education, and work experience and direct a finding of disabled or not disabled for each

combination.  If the claimant also has any non-exertional limitations or cannot perform substantially all the exertional demands at a given level, then the Grid Rules are used as a framework for decision-making unless there is a rule that directs a conclusion of disabled without considering the additional non-exertional or exertional limitations.  *Id*. §§ 404.1569a(d), 416.969a(d).  If the claimant has solely non-exertional limitations, then the Grid Rules provide a framework for decision-making.  *Id*. §§ 404.1569a(c), 416.969a(c).

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was fifty years old on his alleged onset date (October 9, 2010), and his date last insured was December 31, 2010.  (R. 31, 48.)  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date.  (R. 31.)  At Step Two, the ALJ found that Plaintiff had the following severe impairments:  diabetes and obesity.  (R. 31.)  The ALJ also found at Step Two that Plaintiff had the following impairments that were not severe:  back pain; sleep apnea; diabetic peripheral neuropathy; neuralgia; osteoarthritis; and mood disorder.  (R. 32-33.)  At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any Listing.  (R. 34.)  At Step Four, the ALJ found that Plaintiff had the RFC to perform the full range of light work with no additional limitations.  (R. 34-37.)  The ALJ further found at Step Four that Plaintiff was capable of performing his past relevant work as a retail manager, driver, and car salesperson.  (R. 37-38.)  The ALJ concluded that Plaintiff was not disabled from the alleged onset date through the decision date (June 10, 2013).  (R. 38.)

Plaintiff contends that the ALJ's decision should be reversed under Sentence Six of 42 U.S.C. § 405(g) based on additional evidence that was not before the ALJ but was considered by the Appeals Council.  Plaintiff alternatively contends the ALJ's decision should be reversed under

Sentence Four of 42 U.S.C. § 405(b) because the ALJ erred in two respects at Step Four.[7]  First, Plaintiff argues that the RFC "is both non-evidentiary and dependent on the arbitrary elimination of proven severe impairments."  ECF No. 13 at 20.[8]  Second, Plaintiff disputes the ALJ's finding that Plaintiff was able to perform past relevant work.  Plaintiff requests that the Court remand the case to the Commissioner.  Defendant contends that the ALJ's decision should be affirmed in its entirety because it correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence.

## IV.    SUMMARY OF RELEVANT EVIDENCE

### A.    <u>Evidence Submitted To ALJ Before Hearing.</u>

#### 1.    Treating Providers.

The medical evidence in the record before the ALJ hearing consisted of:  a sleep study report dated April 1, 2009 from Palisades Medical Center's Sleep Wake Center (R. 355-56); lumbar spine x-ray report dated June 22, 2012 (R. 462, 523); treatment records from Palisades Medical Center's Center for Diabetes, Endocrinology & Metabolic Disorders from January 2008 through October 2012 (R. 304-410, 439-45, 464-97, 528-39); and treatment records from North Hudson Community Action Group from August 2006 through October 2012 (R. 418-38, 446-61, 463, 499-522, 524-27).

---

[7] The Court need not decide whether Plaintiff's summary criticism of the ALJ's Step Two findings (see ECF No. 13 at 10, 19-20) constitutes adequate briefing, because that argument fails as a matter of law.  *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("[I]f the ALJ found in [the claimant's] favor at Step Two, even if [the ALJ] had erroneously concluded that some of [the claimant's] other impairments were non-severe, any error was harmless.").

[8] The "opening statement" section of Plaintiff's brief requests that the Court reverse the ALJ's denial of benefits and remand for payment (ECF No. 13 at 1), but this is merely boilerplate.  Plaintiff repeatedly requests throughout the remainder of his brief that the Court remand for a new hearing.  *See id.* at 11, 20, 23, 28.

The sleep study revealed that Plaintiff had severe obstructive sleep apnea for which he was prescribed a CPAP machine. (R. 32.) The spinal x-rays were ordered by Plaintiff's primary care physician, Dr. Leonor Ramos (internal medicine) with North Hudson Community Action Group, after Plaintiff reported occasional back discomfort in April 2012. The x-rays revealed no abnormalities, and Dr. Ramos recommended that Plaintiff take Tylenol as needed for any back pain. (R. 32.) As accurately summarized by the ALJ, the remaining evidence revealed:

> The claimant has been receiving treatment for his diabetes at the Palisades Medical Center since 2008. Treatment records from 2011 and 2012 indicate that the claimant's medications were regularly adjusted, and that he reported noncompliance with medication on multiple occasions. In February 2011, he reported failing to take multiple medications and administering improper dosages of insulin. The records also indicate that the claimant is six feet tall, and that over the course of his treatment, his weight remained above 280 pounds with a body mass index (BMI) of 38 or higher. During his most recent documented follow up visit on September 11, 2012, his BMI was listed as 39.7 and his hemoglobin A1C was 10.1. Additionally, his blood pressure and lipids were listed as adequately controlled, but his diabetes remained uncontrolled and his medication was increased.
>
> The claimant also attends regular follow up visits with Leonor Ramos, MD, his primary care physician. On December 15, 2011, he presented for a checkup and reported noncompliance with medication but also stated that he was feeling well. Dr. Ramos noted that the claimant's BMI was 39.05, but indicated no other positive findings on physical examination. She diagnosed the claimant with type II diabetes, uncontrolled, without complication, as well as hypertension and obesity. Dr. Ramos counseled the claimant on the importance of medication compliance, proper diet, and regular exercise. During his most recent follow up with Dr. Ramos, on October 3, 2012, the claimant again reported that he felt well. Dr. Ramos indicated that the claimant was obese with a BMI of 40.30, and again noted no positive findings on physical examination. She indicated that the claimant's diabetes remained uncontrolled and stressed the importance of treatment compliance and recommended diet and weight loss.

(R. 35 (record citations omitted).)

### 2. Plaintiff's Reports/Testimony.

In a Disability Report dated April 6, 2012, Plaintiff advised that he stopped working in July 2011 because of diabetes, high blood pressure, ocular hypertension, back injury, and knee problems. (R. 210-19.)

In a Function Report dated April 30, 2012, Plaintiff advised that due to his impairments he was no longer able to drive at night, stand for long periods of time, or do physical work. He was unable to sleep at times and suffered from severe nightmares, muscle cramps, and back pain. He could not stand for long in the shower or when using the toilet. He required reminders to take his medicines. His wife prepared his meals for him. He was unable to do house/yard work due to shortness of breath, fatigue, and increased heart rate. He went outside only when necessary but could go out alone and drive a car. He could handle his finances. He enjoyed watching nature shows on television and wished he were able to "go out and enjoy nature on a 1 to 1 basis as I would like to." On a daily basis, he talked on the phone and spent time with his family at home. He did not have problems getting along with others. He could walk for 200 meters before needing to sit for 5-10 minutes. His ability to pay attention was dependent on his interest level. He could lift up to 75 pounds. He experienced back and knee pain when squatting, bending, standing, and kneeling; back and shoulder pain when reaching; and joint pain when opening and closing his hands. (R. 237-44.)

In a Disability Report dated August 22, 2012, Plaintiff advised that, as to changes since his last Report, he was also experiencing swelling in his legs, problems breathing, "trouble" with his back, a need for frequent sitting, constant pain, and extreme fatigue. (R. 252-58.)

13

In a Disability Report dated January 18, 2013, Plaintiff advised that, as to changes since his last Report, he was also experiencing sleep apnea and "suffering from depression which affects his ability to function on a daily basis." (R. 265-71.)

On April 12, 2013, Plaintiff's counsel submitted the following list of Plaintiff's prescriptions: 3 medications for insulin (Insulin, Novolog Flex Pen, Janumet); 1 medication for cholesterol (Vytorin); 1 medication for hypothyroidism (Levothyroxin); 2 medications for depression and anxiety (Paxil and Xanax); and 4 medications for hypertension (Carvedilol, Clorthalid, Amlodipine, and Enalapril). (R. 290-91.)

During the April 17, 2013 hearing, Plaintiff testified that he completed his high school education in the Dominican Republic. He stopped working in 2010 or 2011 due to problems with his vision, back, and legs. He testified he could not work any longer due to uncontrolled diabetes and problems with his vision, back, legs, feet, neck, and shoulders. He had a car but did not drive per his doctor's instructions because of his medications. He could not sit more than 30 minutes before needing to stand up because of numbness in his legs. He could not walk more than 3 blocks before needing to sit down because of back pain. He could not stand more than 15 minutes, and he could lift up to 20 pounds but not on a regular basis. He did not sleep through the night because he used a CPAP machine and needed to urinate at least 6 or 7 times. During the day, he needed to urinate every hour or hour and a half. He typically walked for 2-3 blocks before breakfast. He could generally care for his personal needs but required his wife's assistance with button down shirts. He was tired from his medication and napped from 2-3 hours a day. He spent most of his time at home, although if he could find a ride he sometimes went to see a friend. He used to help his wife cook and clean but now she did it herself, although he often kept her company. He had not traveled to the Dominican Republic in eight years or taken any other trips. He had had diabetes-

related problems with his eyesight for five years for which surgery was suggested. He could not close his hands completely; his legs and arms were constantly numb; his back was in constant pain; and his upper foot, heel, and sole were in constant pain. His wife needed to remind him to take his medicine. He was mostly isolated except for his wife; he sometimes cried every day; he sometimes experienced anxiety from claustrophobia; and he had daily concentration problems. Plaintiff also testified about his past relevant jobs as actually performed. (R. 48-60.)

   **B.    Evidence Submitted To ALJ After Hearing.**

   At the end of the April 17, 2013 hearing, the ALJ granted a request to keep the record open an additional two weeks for Plaintiff's prior counsel to obtain additional medical records. (R. 46-47, 64.) On May 30, 2013, the additional evidence submitted to the ALJ by Plaintiff's prior counsel (R. 29), and the ALJ added this evidence to the record as Exhibits 8F (R. 540-46) and 9F (R. 547-78). These exhibits contain treatment notes from Jersey City Medical Center Clinic for September 2012 through April 2013, and treatment notes from Christ Hospital for December 2012 through April 2013. (R. 29.)

   On September 10, 2012, Plaintiff switched primary care physicians and was treated for the first time by Dr. Patrick Beaty (internist) with Jersey City Medical Center Clinic. Dr. Beaty noted that Plaintiff appeared obese and had a BMI of 39.2, but reported no abnormal findings based on physical examination. Plaintiff was diagnosed with poorly controlled diabetes mellitus and with diabetes renal manifestations uncontrolled. Laboratory test results revealed that Plaintiff's hemoglobin A1C was 8.7. During an October 22, 2012 visit, Plaintiff reported trouble sleeping but no blurry vision, tingling, burning, or numbness. Dr. Beaty again reported no abnormal findings based on physical examination. During a January 7, 2013 visit, Plaintiff complained about abdominal pain after eating. Dr. Beaty again reported no abnormal findings based on

physical examination.  During an April 1, 2013 visit, Plaintiff reported back pain and upper extremity numbness (but no symptoms in his lower extremities).  Dr. Beaty's physical examination findings included no acute distress and no musculoskeletal, sensory, or motor abnormalities.  (R. 32, 35-36, 569.)

On December 12, 2012, Plaintiff sought psychiatric care for the first time and was evaluated by Dr. Ghulam M. Bajwa (psychiatrist) with Christ Hospital.  Dr. Bajwa diagnosed Plaintiff with mood disorder with depressive features secondary to his general medical conditions, and specifically to his untreated sleep apnea, as Plaintiff had not used his CPAP machine for the last year despite having experienced improvement with regular use.  Plaintiff was prescribed Wellbutrin.  During a December 26, 2012 visit, Plaintiff advised that he had stopped taking Wellbutrin because it made him feel anxious.  Dr. Bajwa discontinued Wellbutrin and prescribed Paxil and Xanax.  During a January 15, 2013 visit, Plaintiff reported compliance with his medication and that he was waiting for a CPAP machine following a new sleep study.  During a February 27, 2013 visit, Plaintiff reported noncompliance with prescribed medication, but also stated that he felt better on the medication improved mood and sleep.  Plaintiff missed his scheduled April 17, 2013 appointment (presumably because of the ALJ hearing).  (R. 32-33, 37, 542, 544-46.)

On April 10, 2013, Plaintiff was treated by Dr. Michael Isaac (podiatrist) with Jersey City Medical Center Clinic for bilateral foot pain, numbness, tingling, and burning.  Dr. Isaac's physical examination findings included decreased response to tactile stimulation on the sole of the foot and posterior leg, normal posterior tibial and dorsal pedis pulses, and no ulcers.  He diagnosed diabetic peripheral neuropathy, neuralgia, and osteoarthritis, and he ordered a series of x-rays.  There are no subsequent treatment notes or diagnostic test results from Dr. Isaac in the record.  (R. 32.)

**C.**    <u>**Evidence Never Submitted To ALJ.**</u>

On September 5, 2013, the Appeals Council granted a request from Plaintiff's prior counsel for an extension of time to obtain additional medical evidence.  (R. 11-12.)  The additional evidence subsequently submitted by Plaintiff's prior counsel contained:  treatment notes from multiple chiropractors with Chiropractic Care for the period between November 2009 and July 2010; MRI reports of cervical and lumbar spine dated January 7, 2010; MRI report of left knee dated January 20, 2010; EMG study results dated April 14, 2010; and treatment notes from Dr. Nabil M Yazgi (neurologist) with Hudson Neurology and Pain Management dated March 31, 2010 and May 14, 2010.  (R. 6-7.)

On January 8, 2015, the Appeals Council denied Plaintiff's request for review of the ALJ's decision.  The Court rejects Plaintiff's assertion that the Appeals Council "does not refer to this evidence, does not mention the evidence and does not even suggest that it was reviewed or the memo considered."  ECF No. 13 at 24; *see id.* at 25 ("The [Appeals Council] did not reject this evidence it merely ignored it.").  Indeed, the Appeals Council expressly advised:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.  We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(R. 4.)  The referenced Order indicated that the brief from Plaintiff's counsel dated September 25, 2013 was added to the record as Exhibit 17E (R. 292-97) and that the evidence listed above from the period between November 9, 2009 and May 14, 2010 was added as Exhibits 10F (R. 579-619) and 11F (R. 620-51).

## V.    DISCUSSION

### A.    Sentence Six Remand.

When a claimant seeks to rely on evidence that was not presented to the ALJ, a district court may remand the case under Sentence Six of 42 U.S.C. § 405(g) if the claimant can demonstrate that (1) the evidence is new, (2) good cause exists for not presenting the evidence to the ALJ in a timely manner, *and* (3) the evidence is material. *See Matthews v. Apfel*, 239 F.3d 589, 592-92 (3d Cir. 2001); *Strelec v. Colvin*, No. 5-cv-3010 (JLL), 2016 WL 2736103, at *8 (D.N.J. May 11, 2016). The claimant bears the burden of demonstrating that all three elements are satisfied. *See Szubak v. Sec'y of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). Plaintiff contends that remand is warranted based on additional evidence relating to his back impairment that was not before the ALJ but was considered by the Appeals Council. The Court disagrees because Plaintiff cannot satisfy at least two of the requisite elements.

First, Plaintiff's counsel concedes that the additional evidence submitted to the Appeals Council by Plaintiff's prior counsel on September 25, 2013 (i.e., Exhibits 10F and 11F) "[was *always* in existence." ECF No. 13 at 26 (emphasis in original). The proffered evidence was created in 2009 and 2010, at least three or more years before the ALJ issued his decision. There is no credible argument that this evidence is new.

Second, Plaintiff's counsel concedes that "there is no reliable or objective avenue by which the undersigned can determine good cause or any cause why prior counsel could not or did not produce these records for ALJ review[.]" ECF No. 13 at 27. The Court is similarly unable to identify any such avenue or cause. During the ALJ hearing, Plaintiff's prior counsel specifically requested – and received – more time to introduce additional medical evidence into the record before the ALJ. *See id.* ("To be frank, prior counsel did obtain extra time to produce the record

and did produce some records.") (citing R. 540-78). That the additional evidence on which Plaintiff's current counsel now relies was not among the additional evidence introduced by Plaintiff's prior counsel does not constitute good cause. *See*, *e.g.*, *Chalfant v. Commissioner of Social Security*, 737 F. App'x 625, 627-28 (3d Cir. Jun. 19, 2018) (prior counsel's alleged negligence in failing to submit various medical records to ALJ is not good cause); *Levesque-Cerka v. Astrue*, No. 06-cv-6025 (SRC), 2008 WL 699588, at *8 (D.N.J. Mar. 12, 2008) ("Attorney miscalculation does not fall within the bounds of good cause[.]").[9]

The Court therefore finds that remand is not warranted under Sentence Six of 42 U.S.C. § 405(g).

### B.    Sentence Four Remand.

Plaintiff also contends that remand is warranted under Sentence Four of 42 U.S.C. § 405(g) because the ALJ's Step Four findings as to Plaintiff's RFC and past relevant work were not supported by substantial evidence.[10]

### 1.    Step Four:  RFC.

At Step Four, the ALJ found that Plaintiff had the RFC to perform light work without limitation. (R. 37.) Plaintiff's brief on this issue is hopelessly confusing. As best the Court can discern, Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence

---

[9] The Court expresses no opinion about the conduct of Plaintiff's prior counsel or whether the proffered evidence would be material if Plaintiff had satisfied the first two elements.

[10] Plaintiff asserts that a finding of not disabled would be directed by Grid Rule 292.09 if the ALJ found at Step Four that Plaintiff both (1) had the RFC to perform the full range of sedentary or light work and (2) could not perform his past relevant work. *See* ECF No. 13 at 10, 23. Plaintiff complains that the ALJ reached his Step Four findings "in a surgically goal-oriented manner, the goal being to deny benefits by rejecting any impairments, opinions or testimony inconvenient to such denial." *Id.* at 11. Having reviewed the entire record, the Court rejects this complaint as unfounded. However, the Court expresses no opinion as to the potential applicability of the Grid Rules, as that is an issue for the ALJ to determine on remand (if necessary) based on findings about Plaintiff's education and skillset.

because the ALJ failed to consider:  (1) whether Plaintiff's obesity and diabetes resulted in non-exertional limitations; and (2) the impact of impairments found to be non-severe by the ALJ at Step Two.  The Court agrees with Plaintiff as to the ALJ's consideration of obesity, sleep apnea, and mood disorder.  The Court also identifies other flaws in the ALJ's decision that separately warrant remand for a new RFC finding.

The ALJ stated that Plaintiff's RFC was reduced to the full range of light work due in part to his documented history of obesity.  (R. 37.)  Although no treating source opined that Plaintiff experienced any specific functional limitation caused by his obesity, the ALJ was required to consider Plaintiff's obesity in the RFC analysis.  Social Security Ruling 02-1p instructs:

> Obesity can cause limitation of function.  The functions likely to be limited depend on many factors, including where the excess weight is carried.  An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling.  It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching.  The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers.  The ability to tolerate extreme heat, humidity, or hazards may also be affected.

> The effects of obesity may not be obvious.  For example, some people with obesity also have sleep apnea.  This can lead to drowsiness and lack of mental clarity during the day.  Obesity may also affect an individual's social functioning.

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.  Individuals with obesity may have problems with the ability to sustain a function over time.  As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.  In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity.  This may be particularly true in cases involving sleep apnea.

> The combined effects of obesity with other impairments may be greater than might be expected without obesity.  For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be

expected from the arthritis alone. … As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

Social Security Ruling 02-1p, *Titles II & XVI: Evaluation of Obesity*, 2002 WL 34686281, at *6-7 (S.S.A. Sep. 12, 2002).   The Court is unable to conduct a meaningful review of the RFC determination because there is no indication that the ALJ considered Social Security Ruling 02-1p at Step Four.  (R. 34 (advising that, in making the RFC finding, the ALJ considered Social Security Rulings regarding consideration of opinion evidence and subjective symptoms).)[11]

As to Plaintiff's mood disorder, the Court cannot a meaningful review of the RFC finding because of this non sequitur in the ALJ's assessment of Dr. Bajwa's opinion:

> As for the opinion evidence, the opinions expressed by Dr. Bajwa, the claimant's treating psychiatrist, are *given significant weight*.  Dr. Bajwa opined that while the claimant does have some severe symptoms, his problems are secondary to his medical conditions, specifically his untreated sleep apnea.  This opinion is *given weight* because it is based on an in person examination of the claimant by a treating source.  However, it is *not given great weight* because the minimal treatment records regarding the impact of the claimant's mental health condition and sleep apnea are insufficient to fully support or refute this opinion.

(R. 37 (emphasis added).)  The Court is unable to ascertain how much weight the ALJ ascribed to this opinion and the reasons for doing so.

As to Plaintiff's other severe and all non-severe impairments, the Court finds no error in the ALJ's assessment at Step Four:

- Plaintiff's medical diagnosis of uncontrolled diabetes is not itself a limitation on his ability to do work-related activities.  *See* ECF No. 13 at 19 ("Plaintiff has been

---

[11] In contrast, the ALJ expressly considered Social Security Ruling 02-1p at Step Three:

> Additionally, while there is no specific listing for obesity, this impairment was considered in conjunction with the claimant['s] other impairments as instructed by SSR 02-1p.  In this case, there is no evidence that the claimant's obesity has exacerbated his other conditions causing listing level symptoms and functional limitations.  There is also no indication in the treatment records that the claimant's obesity alone has resulted in listing level limitations such as an inability to ambulate effectively.

(R. 34.)

diagnosed with 'uncontrolled' or 'poorly controlled' diabetes throughout the record. Glucose readings are consistently above 200 and many times above 300. There isn't a single A1c reading within normal range, every reading is above 8 (indicating long term uncontrolled diabetes) and most readings are above 10."). The ALJ's decision acknowledged this diagnosis; the medical evidence on which it was based; the many admonishments from Plaintiff's treating physicians to comply with prescribed treatment including medication, diet, and regular exercise; and Plaintiff's repeated noncompliance. Plaintiff points to no evidence overlooked by the ALJ and to no specific functional limitation opined by any medical source.

- As the ALJ explained, Plaintiff did not complain about back pain until April 2012 – eighteen months after his alleged onset date. Dr. Ramos noted no positive physical findings and recommended Tylenol. Lumber spine x-rays from June 22, 2012 revealed no abnormal pathology. Plaintiff did not complaint about back pain again until April 2013, when Dr. Beaty noted no acute distress and no abnormal findings and limited his diagnoses to uncontrolled diabetes and obesity. Aside from the additional evidence for which Plaintiff seeks a Sentence Six remand (*see* ECF No. 13 at 10 (citing evidence not before ALJ)), Plaintiff points to no evidence overlooked by the ALJ and to no specific functional limitation opined by any medical source.

- As the ALJ also explained, Plaintiff's diabetic peripheral neuropathy, neuralgia, and osteoarthritis were first diagnosed by Dr. Isaac in April 2013 – two and a half years after his alleged onset date and two months before the decision date. Plaintiff points to no evidence overlooked by the ALJ and to no specific functional limitation opined by any medical source.

Moreover, even if the ALJ had not erred in analyzing Plaintiff's obesity and sleep apnea at Step Four for the RFC finding, the Court identifies three separate errors in the ALJ's decision that each warrant remand. First, the decision did not address Plaintiff's testimony that he is medically restricted from driving:

ALJ:   Do you have a driver's license?

A:     Yes, sir.

ALJ:   And do you have a car?

A:     Yes, sir.

ALJ:   And do you drive?

A:     Due to the medication, the doctor said not to drive and because of that I don't drive.

> ALJ:    And so how do you – when you need to go somewhere how do you get there?
>
> A:    My daughter drives me.

(R. 49.)  Plaintiff's past relevant work included a job as a vehicle transporter.  The ALJ asked no follow up questions to develop the record in this regard and failed to explain why this potentially dispositive limitation was not included in Plaintiff's RFC.

Second, the Court cannot conduct a meaningful review of the ALJ's assessment of the non-examining medical opinions:

> Additionally, *significant weight is given* to the opinions expressed by the State agency medical and psychological consultants at exhibits 1A, 2A, 7A and 8A, that the claimant had no medically determinable and severe impairments.  Although not examining sources, as State agency consultants, these practitioners are deemed experts for the purposes of disability program rules and medical record review.  *However, these assessments were completed in June 2012 and November 2012, prior to the submission of additional medical records from Christ Hospital and Jersey City Medical Center.*

(R. 37 (emphasis added).)  The non sequitur in this assessment makes it impossible to determine how much weight the ALJ ascribed.

Third, the ALJ's assessment of Plaintiff's subjective complaints is flawed.  After acknowledging that "symptoms may sometimes suggest a greater degree of impairment than can be shown by the medical evidence alone," the ALJ assessed Plaintiff's reports and testimony based on the factors set forth in Social Security Ruling 96-7p.  (R. 36 (citing 20 C.F.R. §§ 404.1529, 416.929 and SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims:  Assessing the Credibility of an Individual's Statements*, 1996 WL 374186, at *4 (S.S.A. Jul. 2, 1996)).)[12]  As to the first factor – the claimant's daily activities – the ALJ found:

---

[12] Social Security Ruling 96-7p applies to SSA decisions that, like the ALJ decision in this case, were made prior to March 28, 2016.

> In terms of the claimant's daily activities, he testified that his daily activities include taking a morning walk, spending time with his wife, attending appointments, and visiting friends  He also indicated that he is generally able to attend to his personal care needs independently, though his wife sometimes helps him get dressed.  In his Function Report Adult, he indicated that his wife prepares meals, and performs all of the cleaning, laundry and shopping.  He also indicated that he enjoys watching nature programs on television and is able to pay bills and manage his finances.  Therefore, a more restrictive residual functional capacity is not warranted given the claimant's high level of functioning.

(R. 36 (record citation omitted).)  As noted by the ALJ, Plaintiff does not do any cooking, cleaning, laundry, or shopping.  His "morning walk" consists of 2-3 blocks; he has one friend whom he sees only when he can get a ride; he needs to urinate at least 6-7 times during the night and every hour or hour and a half during the day; and his socializes with his wife because he does not leave home except for appointments.

The Court finds that remand is warranted because the ALJ's RFC finding that Plaintiff's daily activities establish a high level of functioning is not supported by substantial evidence.

### 2.    Step Four:  Past Relevant Work.

The ALJ found that Plaintiff could continue to perform his past relevant work, both as actually and generally performed, as the owner/manager of a retail grocery market, vehicle transporter, and car salesperson.  (R. 39.)  The Court cannot meaningfully review the ALJ's past relevant work finding because the decisional RFC was flawed.

Plaintiff argues that the ALJ's past relevant work findings were not supported by substantial evidence because they both were inconsistent with VE testimony and did not comply with Social Security Ruling 82-62.  The Court offers two observations.

First, the VE testified that the retail manager job (DOT #185.167-046) is skilled SVP 7 work; the vehicle transporter job (DOT #919.83-014) is unskilled SVP 2 work; and the car salesperson job (DOT #273.353-010) is skilled SVP 6 work.  The VE also testified that all three

jobs are classified at the light exertional level, but that aspects of the retail manager job as performed by Plaintiff were classified as medium exertion level. (R. 62.) The VE further testified affirmatively when asked by the ALJ whether an individual with an RFC limited to light work could "do" all three jobs. (R. 62-63.) Although the ALJ did not specify whether the question encompassed all three jobs as generally *and* actually performed, the ALJ's decision stated that the VE so testified. (R. 39.)

Second, Social Security Ruling 82-62 provides in relevant part that, when comparing a claimant's RFC with the physical and mental demands of past relevant occupations,

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

SSR 82-62, *Titles II & XVI: A Disability Claimant's Capacity To Do Past Relevant Work, In General*, 1982 WL 31386, at *3 (S.S.A. 1982) ("If more than one job was performed during the 15–year period, separate descriptions of each job will be secured."). The ALJ's decision does not include any reference to – let alone give a description of – Plaintiff's testimony about his past jobs. *Compare Cox v. Comm'r of Soc. Sec.*, No. 09-3810 (WJM), 2011 WL 888377, at *4-5 (D.N.J. Mar. 14, 2011) (rejecting argument that ALJ did not comply with SSR 82-62 where ALJ "specifically relied on [claimant's] own testimony and work history reports in determining the demands of her past relevant work"); *Figueroa v. Astrue*, No. 09-cv-232 (JLL), 2009 WL 5206284, at *6 (D.N.J. Dec. 22, 2009) (rejecting argument that ALJ did not comply with SSR 82-62 where

ALJ's decision "includes an appraisal of the Plaintiff's testimony" as to each separate past relevant job). Nor does the decision articulate the ALJ's basis for his findings other than wholesale adoption of unspecified VE testimony.

## V. CONCLUSION

For these reasons, the Court reverses the Commissioner's decision that Plaintiff was not disabled and remands the case for further proceedings in accordance with the preceding instructions and the accompanying Order. The Court appreciates that it is approaching seven years since Plaintiff filed his DIB and SSI applications. Plaintiff waited two and a half years for the Appeals Council to review the ALJ's decision, and he waited three and a half years for this Court to issue a decision on his appeal of the Commissioner's decision. These delays are unreasonable and unfortunate, and the Court urges the Commissioner to proceed with due speed.


Dated:   February 21, 2019             _____s/ Paul A. Zoss_____
At Newark, New Jersey                  PAUL A. ZOSS, U.S.M.J.